Ruth SAPP and Fletcher
D. Sapp, Plaintiffs,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, Defendant.

Civ. A. No. 94–2251–GTV.

United States District Court,
D. Kansas.

Jan. 18, 1995.

Memorandum Denying Reconsideration
Feb. 13, 1995.

Michael L. Hodges, Shawnee Mission, KS, Michael R. Lawless, Overland Park, KS, for plaintiffs.

David C. Stout, Chionuma & Associates, P.C., Kansas City, MO, for defendant.

## MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

Pending before the court is a motion by the Federal Deposit Insurance Corporation (FDIC), pursuant to Fed.R.Civ.P. 12(b)(1), to dismiss plaintiffs' claims for lack of subject matter jurisdiction (Doc. 3). The FDIC contends that this court lacks subject matter jurisdiction over the claims against it because plaintiffs failed to file a timely administrative claim pursuant to the procedure established by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1821(d). For the reasons set forth below, the FDIC's motion to dismiss is granted.

### I. Factual Background

The relevant facts are derived from plaintiffs' complaint and the material submitted in connection with the motion to dismiss.

In their complaint filed in this court on June 23, 1994, plaintiffs Fletcher D. Sapp and Ruth Sapp (the Sapps), husband and wife, seek recovery of approximately $620,-650.00. The Sapps allege that they had entered into certain loan transactions with Midland Bank of Kansas (Midland). They allege that Midland had, without their knowledge, taken $620,650.00 from one loan account and applied that money to a pay down a second loan. The Sapps then satisfied the full original amount due on the second loan on April 12, 1991, by transferring certain real property to Midland, as provided for in the loan agreement. In June 1992 the Sapps repaid the full amount of the first loan which included the $620,650.00 which Midland had improperly applied to the second loan.

Midland was declared insolvent and the FDIC became its receiver on April 2, 1993. The FDIC published notice in a local newspaper on September 3, October 4, and November 3, 1993, of the right to present to the FDIC, as receiver, claims against the failed institution. This notice advised that claims against Midland must be presented to the FDIC on or before December 6, 1993.

The Sapps did not file an administrative claim on or before the filing deadline. Instead, on April 11, 1994, they contacted an attorney to discuss possible legal action. On the advice of the attorney, the Sapps filed an administrative claim which was dated April 22, 1994, and received by the FDIC on April 26, 1994. By notice dated April 26, 1994, the FDIC disallowed the Sapps' claim because it had been filed after the deadline for filing claims.

Ruth Sapp, in a signed affidavit, alleges that neither she nor her husband received notice of the appointment of a receiver in time to file an administrative claim by the deadline. She also alleges that neither she nor her husband ever received a mailed notice similar to the one published in the newspaper. The FDIC does not claim that it mailed to the Sapps a notice similar to the one published, but it does allege, in an affidavit signed by its employee Pam Ippolito, that the Sapps were not listed as creditors on Midland's books.

The FDIC contends that the Sapps knew, prior to the December 6, 1993, filing deadline, that it had been appointed as receiver for Midland. In support, the FDIC has submitted an affidavit from an employee of Bank IV, the bank with which the FDIC had con-

tracted to handle Midland's accounts during the receivership. According to that employee, he sent a notice to the Sapps on April 15, 1993, stating that Midland had been closed, the FDIC had been appointed as receiver, and deposits had been transferred to Bank IV.

FDIC employee Edward R. Campbell stated in an affidavit that on June 7 and June 29, 1993, he had telephone conversations with Fletcher Sapp regarding loans that Mr. Sapp had with Midland which the FDIC was liquidating. According to Mr. Campbell, at the time of those conversations Mr. Sapp was aware that Midland had been closed and that the FDIC was liquidating Midland's assets.

The FDIC has also submitted copies of checks dated May 5, 1993, made payable to the FDIC from a corporation of which the Sapps were president and secretary. The FDIC alleges that these checks were remitted to the FDIC in its receivership capacity for Midland. Finally, the FDIC has submitted a letter from Fletcher D. Sapp dated October 6, 1993 to the FDIC. This letter discussed various loans the FDIC had acquired from Midland in its receivership capacity.

## II. Legal Standard

■ The party invoking the jurisdiction of a federal court has the duty to establish that federal jurisdiction exists. *United States v. Bustillos*, 31 F.3d 931, 933 (10th Cir.1994); *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir.1974). While the plaintiff has the burden of establishing subject matter jurisdiction over a case filed in federal court, the burden of proof depends upon the procedure used to determine the issue. *See Federal Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir.1992).

■ A motion to dismiss for lack of jurisdiction submitted before trial on the basis of affidavits and other documents requires the plaintiff initially only to make a prima facie showing to avoid dismissal. *Id.; Williams v. Bowman Livestock Equip. Co.*, 927 F.2d 1128, 1130 (10th Cir.1991). The

allegations contained in the complaint are initially accepted as true, but if challenged the plaintiff has the duty to support the allegations with competent proof. *Williams*, 927 F.2d at 1130–31; *Pytlik v. Professional Resources, Ltd.*, 887 F.2d 1371, 1376 (10th Cir.1989). "Factual disputes at this initial stage must be resolved in plaintiff's favor when the parties submit conflicting affidavits," but affidavits in support of or opposing motions to dismiss for lack of jurisdiction must comply with the requirements of Fed. R.Civ.P. 56(e), i.e., they must be based on personal knowledge, set forth such facts as would be admissible into evidence, and show affirmatively that the affiant is competent to testify to the matters stated. *Oaklawn Apartments*, 959 F.2d at 174–75 & n. 6.

## III. Statutory Scheme

■ FIRREA grants the FDIC, as receiver, broad powers to determine claims asserted against failed banks through a formal claims process. 12 U.S.C. § 1821(d)(3)–(10).[1] A creditor must exhaust administrative remedies under FIRREA before a district court will have subject matter jurisdiction to consider the case. *Resolution Trust Corp. v. Mustang Partners*, 946 F.2d 103, 106 (10th Cir.1991).

FIRREA requires the FDIC to "promptly publish a notice to the depository institution's creditors to present their claims" by a date not less than 90 days after publication. 12 U.S.C. § 1821(d)(3)(B). It also requires the FDIC to "mail a notice similar to the notice published . . . to any creditor shown on the institution's books," and to mail notice to a claimant "not appearing on the institution's books within 30 days after the discovery of [the claimant's] name and address." 12 U.S.C. § 1821(d)(3)(C).

If a claimant fails to submit a timely claim, the claim is to be disallowed and "such disallowance shall be final." 12 U.S.C. § 1821(d)(5)(C)(i). Unlike claimants whose claims are disallowed by the FDIC for other reasons, a claimant who fails to file a timely administrative claim is precluded from filing

1. Unless otherwise indicated, all statutory references herein are to FIRREA, codified at 12 U.S.C. § 1821.

suit in district court. *Althouse v. Resolution Trust Corp.*, 969 F.2d 1544, 1546 (3d Cir. 1992). The only exception to this rule is found in § 1821(d)(5)(C)(ii) which provides:

> Clause (i) shall not apply with respect to any claim filed by any claimant after the date specified in the notice published under paragraph (3)(B)(i) and such claim may be considered by the receiver if—
>
>> (I) the claimant did not receive notice of the appointment of the receiver in time to file such claim before such date; and
>>
>> (II) such claim is filed in time to permit payment of such claim.

The notice described in § 1821(d)(5)(C)(ii)(I) is only notice of appointment of the receiver, unlike the notice required by § 1821(d)(3)(B) which informs potential claimants of the filing deadline. Thus, in order to quality under this exception, a late-filing claimant must show that the claimant not only received no notice of the filing deadline, but also received no notice of the appointment of the receiver. *Reierson v. Resolution Trust Corp.*, 16 F.3d 889, 891–92 (8th Cir.1994).

After a claim is filed, the FDIC has 180 days to determine whether to allow or disallow the claim. 12 U.S.C. § 1821(d)(5)(A)(i). If the claim is disallowed, or if the 180 days pass without a determination by the FDIC, then the claimant may request further administrative consideration of the claim, or file suit in federal court, within 60 days. 12 U.S.C. § 1821(d)(6). If a claimant fails to complete the administrative claims process, the court is without jurisdiction over (1) claims seeking payment from the assets of the failed financial institution, (2) suits seeking a determination of rights with respect to those assets, and (3) claims relating to any act or omission of the institution or the FDIC as receiver.[2] 12 U.S.C. § 1821(d)(13)(D).

## IV. Analysis

The Sapps contend that they should be excused from missing the filing deadline because the FDIC did not comply with FIR-

REA's notice provisions. Their arguments are addressed below.

### A. Notice to Creditors

■ The Sapps maintain that they were creditors of Midland and that therefore the FDIC was required to mail a notice to them, pursuant to § 1821(d)(3)(C), informing them of the filing deadline for presenting an administrative claim. They contend that Midland's books should have disclosed that the Sapps were potential creditors and therefore the FDIC should have mailed a notice to them at the time the notice was published. Even if Midland's books did not list the Sapps as creditors, they argue that the FDIC should still have mailed a notice to them, and presumably extended the original deadline, within 30 days of the date they filed their claim, the time that the FDIC would have discovered they were claimants.

Section 1821(d)(3)(C) requires that the FDIC mail a notice similar to the one published to any creditor shown on the failed institution's books. FIRREA does not define the phrase "shown on the institution's books," and the FDIC claims that the Sapps were not creditors on Midland's books. The Sapps allege that they must have been shown on Midland's books because of the very nature of the alleged transaction which gave rise to the suit. The Sapps, however, presented no evidence to support this contention.

Notice must also be sent to any claimant not appearing on the institution's books within 30 days of discovering such claimant. 12 U.S.C. § 1821(d)(3)(C)(ii). Arguably, the FDIC would have discovered that the Sapps were claimants when they filed their claim dated April 22, 1994. By then, however, the deadline for filing claims had passed, and § 1821(d)(3)(C) contains no provision for extending the claims filing deadline for those claimants discovered by the receiver after the deadline had passed. Because there is

---

2. It should be noted that under discussion here are only claims which arose prior to receivership. The Tenth Circuit has held that the administrative claims process does not apply to claims arising after receivership based on the management actions of the RTC. *See Homeland Stores, Inc. v. Resolution Trust Corp.*, 17 F.3d 1269 (10th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 317, 130 L.Ed.2d 279 (1994). Similarly, courts have jurisdiction over affirmative defenses even without administrative exhaustion. *Resolution Trust Corp. v. Love*, 36 F.3d 972 (10th Cir.1994).

no provision for extending the deadline, the court finds that the FDIC was not required by § 1821(d)(3)(C)(ii) to mail any notice to plaintiffs upon receipt of their claim. The FDIC could, of course, elect to consider the Sapps' claim under the exception found in § 1821(d)(5)(C)(ii) if the Sapps could show that they received no notification of appointment of the receiver prior to the filing deadline. *See Heno v. Federal Deposit Ins. Corp.*, 20 F.3d 1204, 1210–14 (1st Cir.1994) (reprinting as appendix FDIC's internal procedures which call for mailing notice when potential claim discovered after filing deadline).

Based on the evidence before the court, the Sapps have not established that the FDIC was bound to send notice to them based on their alleged status as creditors on the books of the failed bank. In addition, the court finds that no notice was required when the FDIC became aware of the Sapps' claim in the absence of any provision authorizing the FDIC to extend the claims filing deadline.

■ Even if the FDIC was required to mail a notice to the Sapps the outcome in this case would not change. The court concludes that an inadvertent failure by the FDIC to mail a notice when one is required does not excuse a claimant from complying with the administrative claims procedure and its filing deadline. The Tenth Circuit has not yet addressed this question, but a recent decision by the Ninth Circuit is instructive. *See Intercontinental Travel Marketing, Inc. v. Federal Deposit Ins. Corp.*, No. 92–16507, 1994 WL 715098 (9th Cir. Dec. 28, 1994). In that case, a lawsuit was pending against the failed institution at the time of receivership, thus the case is not directly on point. The court's analysis of the nature of the notice requirement is nevertheless helpful.

In *Intercontinental*, the plaintiff had filed suit against a bank and while the suit was pending the bank was placed in receivership and the FDIC took control. 1994 WL 715098 at *1. The FDIC was substituted as defendant in the suit and then proceeded to publish notices announcing the administrative claims filing deadline. *Id.* The FDIC did not mail such a notice to plaintiff as required

by § 1821(d)(3)(C) and the plaintiff did not file an administrative claim until almost two years after the bar date, after the FDIC had filed a motion for summary judgment. *Id.* Plaintiff argued that because the FDIC had failed to mail to it a notice of the claims bar date, it was not required to exhaust FIR-REA's administrative remedy requirement. *Id.* The district court nevertheless dismissed the case for lack of subject matter jurisdiction, and the Ninth Circuit affirmed.

In discussing the FDIC's failure to mail the required notice, the Ninth Circuit panel first observed that while § 1821(d)(3)(C) makes the mailing of a notice mandatory for the FDIC, it imposes no consequence for the failure to do so. *Id.* at *4. In contrast, § 1821(d)(5)(C) permits late filing of administrative claims when the claimant does not receive notification of the receivership. "FIRREA expressly gives relief from the bar date to claimants who do not receive notice of receivership but does not provide the same relief to claimants who do not receive notice of the administrative claims bar date." *Id.* The panel also noted that there was no evidence that the FDIC's failure to mail a notice to plaintiff was due to anything more than negligence. The court concluded that in some cases affirmative misconduct or intentional disregard of the notice requirements could toll the bar date, but negligence on the part of the FDIC will not excuse the plaintiff from exhausting its administrative remedies. *Id.* at *5.

This court agrees with the reasoning of the Ninth Circuit and finds that the FIRREA provisions do not require the FDIC to entertain claims not timely filed based solely on the FDIC's failure to mail a notice informing the claimant of the claims filing deadline. In addition, nothing in the record shows that the FDIC engaged in any misconduct or intentionally concealed from plaintiffs information about the claims deadline.

## B. Exception to Filing Deadline

Section 1821(d)(5)(C)(ii) provides that the absolute rule requiring disallowance of claims filed after the deadline and barring late filers from asserting their claims in court

shall not apply with respect to any claim filed by any claimant after the date specified in the notice published under paragraph (3)(B)(i) and such claim may be considered by the receiver if—

(I) the claimant did not receive notice of the appointment of the receiver in time to file such claim before such date; and

(II) such claim is filed in time to permit payment of such claim.

"This 'exception only applies to claimants who do not receive notice of the fact of the appointment of a receiver.' The exception does not apply 'to claimants who are aware of the appointment of the receiver but who do not receive notice of the filing deadline.'" *Reierson v. Resolution Trust Corp.*, 16 F.3d 889, 891–92 (8th Cir.1994) (quoting *McLaughlin v. Federal Deposit Ins. Corp.*, 796 F.Supp. 47, 49 (D.Mass.1992)).

■ While Mrs. Sapp asserts in her affidavit that neither she nor her husband received notice of the appointment of a receiver in time to file a timely claim, the FDIC has produced evidence showing that notification was mailed to the Sapps in April 1993, over seven months before the filing deadline. This evidence, coupled with the evidence that Mr. Sapp communicated directly with the FDIC by telephone and mail convinces the court that plaintiffs were on notice long before the filing deadline that the FDIC had been appointed receiver.

■ Even if the requirements of this exception were met, the language of § 1821(d)(5)(C)(ii) is discretionary, stating only that "such claim *may* be considered by the receiver." 12 U.S.C. § 1821(d)(5)(C)(ii) (emphasis added); *see also Palumbo v. Roberti*, 839 F.Supp. 80, 84 (D. Mass.1993). The term "may" is permissive and does not require an exclusive means of action. *See Rose v. Rose*, 481 U.S. 619, 627, 107 S.Ct. 2029, 2034, 95 L.Ed.2d 599 (1987) (use of word "may" in statute establishes only a discretionary power); *accord Federal Deposit Ins. Corp. v. Canfield*, 967 F.2d 443, 446 (10th Cir.), *cert. dismissed,* — U.S. —, 113 S.Ct. 516, 121 L.Ed.2d 527 (1992). Section 1821(d)(5)(C)(ii) gives the FDIC the authority, but not the mandate, to consider an untimely filed administrative claim. "The use of the term 'shall' in other paragraphs of subsection 1821(d) supports this analysis." *Whatley v. Resolution Trust Corp.*, 32 F.3d 905, 909 (5th Cir.1994). Thus, under a literal reading of § 1821(d)(5)(C)(ii), the FDIC could decline to review an untimely filed claim, even if the claimant had not received notification of the receivership.

## V. Conclusion

The court concludes that plaintiffs failed to file a timely administrative claim with the FDIC pursuant to FIRREA and that no statutory exception exists which would excuse that failure. The evidence does not establish that the FDIC was under an obligation to mail notice of the filing deadline to plaintiffs, but even if notice should have been mailed the failure to do so does not excuse the plaintiffs' late filing of their administrative claim. Plaintiffs' allegation that they were without knowledge of the appointment of the receiver is not supported by the evidence. Accordingly, the court lacks subject matter jurisdiction over plaintiffs' claim against the FDIC.

IT IS, THEREFORE, BY THE COURT ORDERED that the FDIC's motion, pursuant to Fed.R.Civ.P. 12(b)(1), to dismiss plaintiffs' claims for lack of subject matter jurisdiction (Doc. 3) is granted.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**

### *MEMORANDUM AND ORDER*

This case is before the court on plaintiff Ruth Sapp's motion to reconsider (Doc. 15) the court's Memorandum and Order entered on January 18, 1995. In that order the court granted defendant's motion to dismiss plaintiffs' claims for lack of subject matter jurisdiction. For the reasons set forth below, plaintiff's motion to reconsider is denied.

The plaintiffs seek recovery of approximately $620,650.00 from defendant Federal Deposit Insurance Corporation (FDIC) as receiver for Midland Bank of Kansas (Midland). The FDIC was appointed as receiver when Midland was declared insolvent on

April 2, 1993. Plaintiffs failed to file a timely administrative claim with the FDIC as required by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1821(d), and the FDIC moved to dismiss the lawsuit for lack of subject matter jurisdiction.

The court, in its January 18, 1995 order, concluded that it lacked subject matter jurisdiction over plaintiffs' claims against the FDIC because they failed to file a timely administrative claim pursuant to FIRREA and no statutory exception existed which would excuse that failure. Specifically, the court held that plaintiffs' allegations that they were without knowledge of the appointment of the FDIC as Midland's receiver were not supported by the evidence. As a result, plaintiffs could not avail themselves of the exception, found in 12 U.S.C. § 1821(d)(5)(C)(ii), to FIRREA's rule barring those who fail to file timely administrative claims from asserting those claims in court. In her motion to reconsider, plaintiff Ruth Sapp requests the opportunity to present additional evidence to purportedly show that she had no knowledge that the FDIC had been appointed as Midland's receiver.

 Whether to grant or deny a motion for reconsideration is committed to the court's discretion. *Hancock v. City of Oklahoma City,* 857 F.2d 1394, 1395 (10th Cir. 1988). In exercising that discretion, courts in general have recognized three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice. *Estate of Pidcock v. Sunnyland America, Inc.,* 726 F.Supp. 1322, 1333 (S.D.Ga.1989); *see Major v. Benton,* 647 F.2d 110, 112 (10th Cir.1981).

In her motion to reconsider plaintiff has not identified any evidence that was unavailable and could not have been provided to the court during consideration of defendant's motion to dismiss. Further, as explained more fully in the court's January 18, 1995 order, even if plaintiff could establish that she had not received timely notification of the receivership, the FIRREA provision cited above merely authorizes, but does not mandate, the FDIC to consider the untimely filed administrative claim. Thus, the FDIC could still decline to review such an administrative claim. In the absence of plaintiff's exhaustion of administrative remedies, the court would still lack jurisdiction.

IT IS, THEREFORE, BY THE COURT ORDERED that the motion by plaintiff Ruth Sapp for reconsideration (Doc. 15) of the court's order entered on January 18, 1995 is denied.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**