**Peter ZAWROTNY and Catherine Zawrotny, Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of Vanguard Savings Bank and Aspen Square Management, Inc., Defendant.**

**Civ. A. No. 94–30004–MAP.**

United States District Court, D. Massachusetts.

Aug. 16, 1995.

---

3. Contrast Georges Seurat's *Sunday at La Grande Jete* to Claude Monet's *Meadow with Haystacks* *near Giverny.*

18

Doné Rosencrance, Wilbraham, MA, for Peter & Catherine Zawrotny.

Richard F. Faille, Ely & King, Springfield, MA, Paul M. Tyrrell, F.D.I.C., Boston, MA, for F.D.I.C.

Jeffrey L. McCormick, Robinson, Donovan, Madden & Barry, Springfield, MA, for Aspen Square Management, Inc.

### Memorandum Regarding Defendant FDIC's Motion to Dismiss

(Docket No. 7)

PONSOR, District Judge.

### I. *INTRODUCTION*

Plaintiffs Peter and Catherine Zawrotny filed this complaint on January 6, 1994 against the Federal Deposit Insurance Corporation ("FDIC"), receiver for the Vanguard Savings Bank ("Vanguard"), and Aspen Square Management, Inc. ("Aspen"), Vanguard's management representative. They allege that Aspen and FDIC were liable for injuries suffered by Peter Zawrotny on property owned by Vanguard and managed by Aspen. FDIC has moved to dismiss the case for lack of subject matter jurisdiction.

The FDIC contends that the plaintiffs failed to comply with the mandatory claims procedures established by the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), located at 12 U.S.C. § 1821(d). Judge Selya has described FIRREA's text as "an almost impenetrable thicket, overgrown with sections, sub-sections, paragraphs, sub-paragraphs, clauses, and sub-clauses—a veritable jungle of linguistic fronds and brambles." *Marquis v. FDIC,* 965 F.2d 1148, 1151 (1st Cir.1992). This normally prompt court has spent an inordinate amount of time in the undergrowth of this extraordinarily intricate statute.

For the reasons set forth below, the court will allow the motion to dismiss.

### II. *DISMISSAL STANDARD*

The appropriate inquiry on a motion to dismiss is whether, based on the allegations of the complaint, the plaintiffs are entitled to offer evidence in support of their claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Accordingly, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiffs. *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir.1990). If under any theory the complaint is "sufficient to state a cause of action in accordance with the law, a motion to dismiss the complaint must be denied." *Knight v. Mills,* 836 F.2d 659, 664 (1st Cir.1987).

### III. *FACTUAL BACKGROUND*

The facts as alleged by the plaintiffs in their complaint and attached affidavits are as follows.

Peter and Catherine Zawrotny resided at 44 Moulton Street, Springfield on June 30, 1991, when a visitor from the neighboring apartment entered the Zawrotny apartment uninvited. A physical altercation between Peter Zawrotny and the intruder ensued and during the fracas Zawrotny stumbled

through the glass in the front entryway, impaling his upper arm on the shattered glass. Catherine Zawrotny witnessed these events.

Over four months later, on November 7, 1991, Peter Zawrotny notified Vanguard, through its representative Aspen, of his personal injury claim. On November 11, 1991, Aspen acknowledged receiving the claim and passed on notice to Vanguard. In January of 1992, plaintiff again notified the Vanguard bank manager of his claim in some unspecified manner. There was no response. See complaint at ¶¶ 12–13.

On or about March 27, 1992, the FDIC became the receiver for Vanguard Bank pursuant to 12 U.S.C. § 1821. While it is not mentioned in the complaint, it is undisputed that the FDIC, on April 1, 1992, issued public notice requiring the filing of all claims against the FDIC in its role as receiver for Vanguard no later than June 30, 1992. Nothing in the complaint or the record suggests that Zawrotny received personal notification either of the appointment of the FDIC as receiver for Vanguard Bank or of the filing deadline for claims, before the June 30 cut-off date. For purposes of this memorandum, the court will assume there was no such direct notification by the FDIC to the plaintiff.

At some point, however, plaintiffs' counsel obtained sufficient information to put her on notice that the FDIC was the receiver for Vanguard. Counsel's paralegal, Gloria Roberts, contacted the FDIC office in Hartford on July 24, 1992 and spoke to Jim Harris, an FDIC representative, asking him about the 44 Moulton Street property. Harris told Roberts that he could not find any documents indicating that the FDIC had "any involvement with the 44 Moulton Street property...." Affidavit of Gloria S. Roberts at ¶ 6, attached to Plaintiffs' Opposition. In August of 1992, the paralegal again contacted Harris and was again told that no record suggested any involvement between the FDIC and the Moulton Street property. However, plaintiffs do not contend that, on either occasion, Harris denied a connection between the FDIC and Vanguard.

Thirteen months passed before Roberts again contacted Harris about the Zawrotnys' claim. On September 28, 1993, Harris referred the paralegal to Rolf Thoreson of the FDIC's claims department. *Id.* at ¶ 10. Roberts' affidavit is unclear as to whether Thoreson acknowledged any connection between the FDIC and the Moulton Street property. In any event, he did tell her that the bar date for the Zawrotnys' claims against the FDIC based upon actions by Vanguard had passed as of June 30, 1992. *Id.* at ¶ 9.[1]

On October 13, 1993 Peter Zawrotny filed his claim with the FDIC requesting to be exempted from the claim bar date pursuant to 12 U.S.C. § 1821(d)(5)(C). This request was denied on November 8, 1993. On January 6, 1994 this lawsuit was filed on behalf of Peter and Catherine Zawrotny. It is undisputed that plaintiff Catherine Zawrotny never used the FIRREA claims process in any way.

### IV. *DISCUSSION*

█ FIRREA establishes a set of mandatory procedures for filing and processing claims against the assets of failed financial institutions, like Vanguard, for whom the FDIC has been appointed receiver. *Heno v. FDIC*, 20 F.3d 1204, 1207 (1st Cir.1994); see 12 U.S.C. § 1821. These procedures assure the prompt resolution of claims, while protecting the rights of claimants. *FDIC v. diStefano*, 839 F.Supp. 110, 115 (D.R.I.1993). FIRREA requires claimants to submit their claims to the FDIC within a specified time for adjudication. 12 U.S.C. §§ 1821(d)(3) *et seq.* Should a timely claim be denied or ignored by the receiver, the claimant may then, and only then, file suit in federal district court. *Id.*, § 1821(d)(5)–(6). Federal courts are without jurisdiction to adjudicate claims made outside the procedure established in § 1821. *Marquis v. FDIC*, 965 F.2d 1148, 1151 (1st Cir.1992).

█ Here, it is undisputed that the plaintiffs failed to file their claim by the required date. In their initial memorandum in opposi-

---

1. The paralegal's affidavit contains two paragraphs numbered 9 and two paragraphs num-bered 10. The paragraph referred to is the second numbered 9.

tion to the motion to dismiss, plaintiffs offered the defense that Peter Zawrotny was entitled to actual notice of the FDIC's appointment as a receiver for Vanguard before his claim could be barred. 12 U.S.C. § 1821(d)(3)(C) requires such actual notice to "any creditor shown on the institution's books...."

The existence of such an obligation, however, is not supported even by the allegations of plaintiffs' complaint. At Paragraph 12, the complaint merely alleges that an employee of Aspen confirmed in writing that notice of the claim had been conveyed by her to Vanguard. The manner of notification is not indicated. Paragraph 13 of the complaint describes a re-notification by Peter Zawrotny in January of 1992 to the bank manager, but again the manner of notification is not described. Nothing in the complaint suggests that documents existed in the records of Vanguard that would put Peter Zawrotny's claim "on the institution's books." Moreover, counsel for the plaintiffs conceded at oral argument that she was not contending that actual notice to the plaintiffs was required under FIRREA.

■ Plaintiffs' fallback argument is that once the FDIC received notice of the existence of the plaintiffs' claim through the telephone contact between plaintiffs' counsel's paralegal and Harris, the FDIC representative, in July of 1992, the FDIC was obliged to give the Zawrotnys direct notice to present their claims within ninety days. In making this argument, plaintiffs rely upon 12 U.S.C. § 1821(d)(3)(C)(ii), which states that "upon discovery of the name and address of a claimant not appearing on the institution's books" notification to present claims should be given within thirty days.

Unfortunately for plaintiffs, this interpretation of FIRREA suffers from at least two deficiencies. First, it would eviscerate the notice and presentation requirements of the statute, designed to insure promptness in the

resolution of claims against the failed institution. According to plaintiffs' logic, the "discovery" of the name and address of a claimant—by late notification from the claimants themselves in this case—would trigger a perpetual obligation of re-notification and permit the filing of claims beyond the deadline date. The notification requirement would essentially be in the hands of all potential claimants who contacted the bank at whatever time. A clear cut-off date for claims could never be established if this construction of the statute were adopted.

More importantly, the plaintiffs' interpretation of FIRREA ignores those provisions specifically aimed at the problem of claims presented after the end of the filing period. FIRREA provides that claims filed after the date specified in the public notice "shall be disallowed and such disallowance shall be final." 12 U.S.C. § 1821(d)(5)(C)(i). Section 1821(d)(5)(C)(ii) states the only exception to this emphatic proviso. The FDIC *may* consider claims where the claimant did not receive "notice of the appointment of the receiver in time to file such claim before such date; and such claim is filed in time to permit payment of such claim." *See* 12 U.S.C. § 1821(d)(5)(C)(ii).

■ Even where the claimant can prove that he received no notice of the appointment of the FDIC as receiver, § 1821(d)(5)(C)(ii) is discretionary, stating only that "such claim *may* be considered by the receiver." (Emphasis added.) This provision of FIRREA "gives the FDIC the authority, but not the mandate, to consider an untimely filed administrative claim." *Sapp v. FDIC,* 876 F.Supp. 249, 254 (D.Kan.1995), *reconsideration denied* (Feb. 13, 1995). But see *FDIC v. diStefano,* 839 F.Supp. 110, 117 (D.R.I.1993).[2] This provision, it has been noted, represents the "sole exception" to the finality provision of FIRREA. *Espinosa v. DeVasto,* 818 F.Supp. 438, 442 (D.Mass.1993).

---

**2.** Judge Lagueux in *diStefano* describes the FDIC's absolute discretion to reject claims filed beyond the deadline, even where the claimant received no notice, as "intolerable" and as implicating constitutional concerns. In this case, the problem noted by Judge Lagueux does not arise. Even after the claimant received notice that the FDIC had been appointed receiver for Vanguard in July of 1992, no claim was filed until October of 1993, fifteen months later. Surely the FDIC did not abuse its discretion in declining to entertain a claim submitted so long after plaintiffs were on notice of its appointment as receiver.

In sum, the statute appears to give the FDIC extremely broad discretion with regard to the receipt of claims made after the end of the filing period. Whatever equitable or constitutional limitation there may be to this discretion, it was not exceeded here. In this case, the FDIC declined to accept a claim filed fifteen months after the plaintiffs clearly became aware of the FDIC's appointment as receiver for Vanguard.

The apparently misleading response plaintiffs received from FDIC's representative Harris regarding the Moulton Street property is merely a red herring. At worst, Harris negligently informed the paralegal that the FDIC had no connection with the Moulton Street property. No allegation is offered that Harris ever suggested that the FDIC had not been appointed receiver for the Vanguard Bank. Once on notice of this fact, plaintiffs' right to make a claim fell within the framework of 12 U.S.C. § 1821(d)(5)(C). The court cannot say that a rejection was improper, given the long delay in making the claim even after notice. It is possible that the prompt filing of a claim might have resulted in a liberal exercise of discretion by the FDIC.

Finally, the claim of Catherine Zawrotny, who never invoked the FIRREA process in any guise, is unfortunately barred as a matter of law.

## V. CONCLUSION

For the forgoing reasons, the FDIC's motion to dismiss is hereby ALLOWED. The matter will be set down for a status conference to establish a date for completion of all pretrial proceedings with regard to the claims against the co-defendant Aspen Square Management, Inc. and the cross-claim by Aspen against the FDIC. All counsel will attend.